UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: MCKINNEY INLAND, L.L.C.

CIVIL ACTION

NO: 07-5564

SECTION: J(4)

**ORDER AND REASONS**

Before the Court is complainant in limitations, McKinney Inland, L.L.C.'s ("McKinney") **Motion for Partial Summary Judgment (Rec. Doc. 27).** This motion, which is opposed, was set for hearing on April 2, 2008 on the briefs. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that McKinney's motion should be granted in part and denied in part.

**Background Facts**

This matter involves a Complaint for exoneration from or limitation of liability filed by McKinney, the owner and operator of the M/V GLENN W. MCKINNEY and the employer of Clyde Fricke and Thomas Gagliano. On December 11, 2006, Gagliano (employed aboard the M/V GLENN W. MCKINNEY as a relief captain) allegedly fell

down an interior stairway while exiting the vessel's wheelhouse. Immediately thereafter, Fricke (employed as a captain aboard the M/V GLENN W. MCKINNEY) also allegedly fell down the same interior stairway while going to render assistance to Gagliano.

On May 8, 2007, Fricke filed a Complaint against McKinney seeking damages as a result of his fall.  McKinney then filed its Complaint for Exoneration from or Limitation of Liability on September 12, 2007.  On October 25, 2007, Fricke and Gagliano filed claims in the limitation proceeding for negligence and unseaworthiness, as well as claims for maintenance and cure.

Gagliano's claims were set for an expedited trial/hearing; however, prior to the hearing date, Gagliano's claims were dismissed by consent motion.  Fricke's claims are still pending. McKinney now moves to dismiss Fricke's claims for maintenance and cure.

### The Parties' Arguments

According to McKinney, this is Fricke's third suit against an employer for personal injuries to his neck and back allegedly suffered during employment.  After the second injury, Fricke was found to be permanently and totally disabled by the Social Security Administration as of January 3, 2001.  Since that time, he has received benefits continuously, including during his employment with McKinney, which began on May 1, 2005 (he currently receives approximately $1491 per month).  Because he

receives Social Security Disability benefits, Fricke became eligible for Medicare in August 2003 and is still Medicare eligible.  As a result, based on Fricke's receipt of Social Security Disability benefits and his eligibility for Medicare, he has no claim for maintenance and cure[1] as such claims are only for the injured Jones Act seaman's out-of-pocket expenses, of which Fricke has none.

In response, Fricke does not dispute McKinney's argument as to maintenance.  As such, partial summary judgment should be granted on this issue.  However, Fricke does dispute the cure issue, arguing that he is not eligible for Medicare coverage as Medicare, by law, is a secondary payer in the instant factual setting.

According to Fricke, Medicare is a secondary payer for two reasons.  First, Medicare coverage excludes treatment for a work-related injury or illness.  Second, Medicare coverage excludes treatment for an illness or an injury caused by an accident when there is liability and/or no-fault insurance that will cover the medical expenses as the primary payer.[2]  Fricke cites Petition of

---

[1] Only if Fricke is able to show is he ineligible for Medicare or that there are not competent services available by a provider willing to accept Medicare can Fricke recover cure expenses.  McKinney argues that Fricke has not and cannot make this showing.

[2] Fricke attaches the Centers for Medicare and Medicaid Services Fact Sheet for Provider Billing Staff, entitled "When Medicare is the Primary Payer," which Fricke's treating

3

RJF Intern. Corp. For Exoneration in which the court, as a matter of first impression in the First Circuit, found that because the complainant's accident aboard the vessel was an accident that was covered under liability insurance coverage contemplated under the Secondary Payer provisions of Medicare, said coverage was the primary payer under Medicare law, and thus Medicare, as the secondary payer, was barred from providing payments to the seaman.  332 F. Supp. 2d 458 (D.R.I. 2004).  As a result, the court found that the vessel owner was still obligated to provide the injured seaman with maintenance and cure despite his eligibility for Medicare benefits.

In the instant case, Fricke argues that McKinney has insurance coverage in place furnishing coverage for "cure" in addition to liability insurance for the alleged accident,[3] thus barring Medicare barred from providing payments.  As a result, McKinney's cure obligation is continuing.

In reply, McKinney states that although Fricke is correct that Medicare coverage is excluded if "payment has been made or can reasonably be expected to be made under a workman's compensation law or plan of the United States or a state or under

---

physicians at the North Institute are required to follow.  This Fact Sheet lists both of the above-mentioned exclusions or exceptions to Medicare coverage.

[3]  In his opposition, Fricke requests that McKinney produce the policy of insurance for the Court's review to determine that Medicare in this case is only a secondary payer by law.

an automobile or liability insurance policy or plan or under no-fault insurance," such provision does not apply in the instant case.  See 42 U.S.C. 1395y(b)(2), "Medicare as Secondary Payer" ("MSP").  McKinney distinguishes Petition of RJF, stating that the ultimate ruling that the employer's insurance policy was a "liability insurance policy or plan" under the MSP is not controlling and is not supported by other case law.  332 F. Supp. 2d 458.

McKinney focuses its argument on the fact that Fricke is not the beneficiary of any insurance policy as contemplated by the MSP that would preclude Medicare coverage.  The only beneficiary of any insurance policies held by McKinney is McKinney.[4]  And those insurers will only be required to pay in the event that McKinney is found liable.  At this time, McKinney contests liability, and even contests that an accident occurred aboard the

---

[4] McKinney cites Toulson v. Ampro Fisheries, Inc. in which the plaintiff argued that the MSP prohibited payment of his medical bills, thus leaving the defendant's cure obligation intact.  The court disagreed and was not persuaded that the MSP compelled a result different from that in Moran Towing & Transp. Co., the seminal case on this particular issue, in which the court held that a vessel owner/employer is relieved of its maintenance and cure obligation when its injured seaman/employee is eligible for Medicare and/or receives Social Security disability benefits.  58 F.3d 24 (2d Cir. 1995).  The Toulson court stated: "reading the Medicare as Secondary Payer provision in its entirety and within the general scheme of the Medicare statute plainly indicates that this provision addresses contractual insurance obligations of insurers . . . not obligations of private employers arising under maritime law . . ., an entirely different situation that the matter at hand."  872 F. Supp. 271, 276 (E.D. Va. 1995).

vessel. As a result, there can be no determination by this Court at this time that McKinney's insurance policy covers Fricke's alleged injuries.

## Discussion

"When a seaman becomes ill or injured while in the service of his ship, the shipowner must pay him maintenance and cure regardless of whether the ship was at fault or whether the ship was unseaworthy." Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1499 (5th Cir. 1995). "Maintenance" is the right of a seaman to food and lodging if he falls ill or becomes injured while in the service of the ship. Id. Maintenance generally refers to a per diem living allowance, designed to cover the reasonable costs of food and lodging, comparable to that which the seaman received aboard his vessel. Pelloto v. L&N Towing Co., 604 F.2d 396, 400 (5th Cir. 1979). "Cure" is the right to necessary medical services to which the seaman is entitled until he reaches maximum medical improvement. Guevara, 59 F.3d at 1499; Pelloto, 604 F.2d at 400.

The law recognizes that a Jones Act employer has no obligation to provide maintenance and cure benefits when the seaman's living expenses and medical treatment are provided by others at no expense to the seaman. The law further specifically recognizes that a vessel owner/employer is relieved of its maintenance and cure obligation when its injured seaman/employee

is eligible for Medicare and/or receives Social Security disability benefits.  See Moran, 58 F.3d 24 (finding that "there is no reasoned distinction . . . in law or policy between Medicare or the provision of healthcare through the public hospitals to the extent that Medicare covered treatment is paid for by the government"); see also In the Matter of Gulf Pride Marine Service, Inc., No. 96-1104, 1997 WL 118394 (E.D. La. Mar. 14, 1997).  However, "this conclusion assumes that the plaintiff qualifies for Medicare, that health care providers competent to perform the indicated procedures are available, within a reasonable distance of the plaintiff's residence, and that these health care providers will accept the Medicare allowance in full payment of their fees."[5]  In the Matter of Gulf Pride Marine Service, Inc., 1997 WL 118394 at *13.  The burden of establishing program ineligibility and incompetency of the provider rests upon the seaman as he is in the best position to ascertain such facts.  Toulson, 872 F. Supp. at 277.

Based on Petition of RJF, which this Court finds more persuasive than Toulson,[6] McKinney is legally still obligated to

---

[5]  To the extent they will not accept the Medicare allowance in full payment, then the outstanding amount remains the responsibility of the employer vessel owner.  In the Matter of Gulf Pride Marine Service, Inc., 1997 WL 118394 at *13.

[6] The court in Petition of RJF admitted that "it is unclear from the text of the [MSP] . . . whether the types of liability insurance itemized . . . refer to policies purchased by the Medicare beneficiary, or whether they also include liability

provide Fricke with maintenance and cure.[7]  The premise underlying this conclusion is that if payment for covered services has been or is reasonably expected[8] to be made by someone else, i.e., a "primary payer," Medicare does not have to pay.

---

policies that insure an entity or individual that has caused harm to the beneficiary."  332 F. Supp. 2d at 467.  The court concluded, however, that it was "more likely that Congress intended the MSP to apply to all kinds of liability insurance policies" considering "the overall purpose of the MSP statute--to reduce Medicare spending and ensure its financial integrity."  Id.  The Toulson court went the other way.  It relied upon the principle that "[i]f competent public medical services are available to the seaman without charge, he may not spurn them and assert a claim for cure against his employer.  That long-established admiralty rule does not depend upon the niceties of funding."  872 F. Supp. at 275.  Contrary to the Petition of RJF court, the Toulson court "fail[ed] to note any overwhelming policy justifications for stretching these statutory principles to apply to the instant matter."  Id. at 276.

Even so, the court in Toulson limited its holding to situations in which a seaman is readily eligible for Medicare and competent medical services are available by a provider willing to accept Medicare payments in full satisfaction of his or her fees.  According to the affidavit submitted by Fricke, Medicare benefits are not available for payment of Fricke's medical care not only with the North Institute, but also with any other doctor.

[7] Because of the implications of the arguments in Petition of RJF, the court permitted the uncontested joinder of the U.S. Department of Health and Human Services ("HHS") as a party.  The United States administers the Medicare program through HHS.

[8]  In response to McKinney's argument its insurers will only be required to pay in the event that McKinney is found liable, such a determination will be made at trial.  In this sense, it can be argued that payment for covered services is reasonably expected to be paid by McKinney and/or McKinney's insurers should McKinney be found liable.  It is of no moment, then, that there "can be no determination by this Court at this time that McKinney's insurance policy covers claimant's alleged injuries."

McKinney has insurance in place furnishing coverage for liability for the alleged accident.  Such liability insurance bars Medicare from making payments resulting from Fricke's injuries.  Under the MSP statute, "liability insurance" is defined as "insurance (including a self-insured plan) that provides payment based on legal liability for injury . . . . It includes, but is not limited to, automobile liability insurance, uninsured motorist insurance, underinsured motorist insurance, homeowners' liability insurance, malpractice insurance, product liability insurance, and <u>general casualty insurance</u>" (emphasis added).[9]  Accordingly,

**IT IS ORDERED** that  **Motion for Partial Summary Judgment (Rec. Doc. 27)** is hereby **GRANTED** in part and **DENIED** in part.[10]

---

[9]  See also <u>In re Falcon Workover Co., Inc.</u> in which the court stated "[w]hile such a policy [to find that Medicare is the equivalent to medical services provided by the former Public Health Service Hospital program to seaman, and therefore to find that Medicare eligibility satisfies a shipowner's duty to cure] makes sense, it is prohibited by the Social Security law," specifically the MSP provisions.  No. 98-05, 1999 WL 243657 at *4 (E.D. La. Apr. 21, 1999) (Livaudais, J.).  "Under these circumstances, this Court cannot find that a shipowner is entitled to the benefits of Medicare payments to relieve it of its liability to provide cure.  The Social Security law contemplates otherwise."  <u>Id.</u> at *5.

[10]  For purposes of clarification, this court grants partial summary judgment, dismissing Fricke's claims for maintenance only.

9

New Orleans, Louisiana, this 25th day of April 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE